**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:18-cv-00050-MR**

| | |
|---|---|
| **AJANAKU MURDOCK,** )<br>)<br>   **Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**KEVIN INGRAM, et al.,** )<br>)<br>   **Defendants.** )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment [Doc. 59].

## I.    BACKGROUND

The incarcerated Plaintiff Ajanaku Murdock ("Murdock" or "the Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Lanesboro Correctional Institution.[1]  The Plaintiff named as Defendants: Kevin Ingram ("Ingram"), a unit manager; and John Herring ("Herring"), the facility administrator.  The unverified Amended Complaint passed initial review[2] on claims that

_____

[1] Now known as Anson Correctional Institution.

[2] This case was assigned to Judge Frank D. Whitney at that time.  [See Doc. 39].

Defendants Ingram and Herring failed to protect Plaintiff from a stabbing by other inmates and that Defendant Ingram was deliberately indifferent to a serious medical need after Plaintiff was stabbed.

The Defendants now move for summary judgment as to all the Plaintiff's claims. [Doc. 59].

The Court notified the Plaintiff of the opportunity to respond to Defendants' Motion and to present evidence in opposition pursuant to Fed. R. Civ. P. 56. [Doc. 64]. The Plaintiff filed a Response[3] [Doc. 70] and the Defendants have filed a Notice of Intent Not to File a Reply [Doc. 71]. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[3] Plaintiff's Response is dated October 9, 2020, the date it was due to be filed. The Response, however, is post-marked November 30, 2020, and the Court received it on December 15, 2020. There is no clear indication when the Response was delivered to prison authorities for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing the prisoner mailbox rule); see Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case). As such, the Court cannot determine on the face of the Response whether it was timely filed. Nevertheless, the Court will consider the Plaintiff's Response.

(1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt., Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 175, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence

from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

### A. Plaintiff's Safety

The Plaintiff was recommended for 90 days of modified housing in late June 2016.[4]  [Doc. 70-3 at 2: Notice of Action Taken by Classification Authority].  Six months later, the Plaintiff wrote a letter to Administrator Herring stating that gang members had targeted the Plaintiff after Plaintiff

---

[4] Defendant Herring did not arrive at Lanesboro C.I. until October 2016 and therefore has no knowledge of any of the alleged incidents that occurred before that date.  [See Doc. 61-2: Herring Decl. at ¶ 16].

4

came into a large amount of money and "[t]hey're threatening me ... saying they'll stab me if I refuse to pay."[5]  [Doc. 70-6 at 4: Plaintiff's Dec. 17, 2016 Letter to Herring].  The letter further states that Plaintiff had been in modified housing for the required 90-day period; that he was infraction free; that he had complained to Unit Manager Ingram and two case managers about the issue; and that Ingram had refused to move the Plaintiff without a justifiable reason.[6]  [Id.].  The Plaintiff was subsequently moved to a different housing pod within the modified housing unit.  [Doc. 70-6 at 6: Plaintiff's Jan. 30, 2017 Letter to Herring].

    In a second letter to Herring dated January 30, 2017, Plaintiff states that he had sent Ingram and Herring numerous requests which were ignored and that he needed to be moved to another housing unit because gang members in the neighboring pod were discussing Plaintiff "through the door." [Id.].  The letter further states that Ingram refused Plaintiff's request for

---

[5] Defendant Herring states that he has no knowledge of the incidents alleged in the Complaint; that he learned of these allegations when he was asked to waive service; that he does not recall having any direct interactions with the Plaintiff; and that he attempted to locate any documentation related in any way to the incidents alleged in this action but was unable to locate any such documentation.  [Doc. 61-2: Herring Decl. at ¶¶ 13-18].

[6] Defendant Ingram states that he has no knowledge of the incidents alleged in the Complaint; that he learned of these allegations when he was asked to waive service; and he attempted to locate any documentation related in any way to the incidents alleged in this action but was unable to locate any such documentation.  [Doc. 61-1: Ingram Decl. at ¶¶ 13-20].

protective custody because Plaintiff would not provide names of the individuals who were threatening him and "snitching isn't an option…." [Doc. 70-6 at 6: Plaintiff's Jan. 30, 2017 Letter to Herring; <u>see also</u> Doc. 70-5 at 2: Jan. 26, 2017 Request for Information (advising Mr. Estridge,[7] a case manager, that he is in danger as a "civilian"[8] in the cell block, that he needs to move to a "neutral" block, and that Ingram keeps telling Plaintiff he is moving but it has not happened)].

The Plaintiff's brother, Lamerick Blackwell, further states in a declaration that he and other family members contacted Ingram and others[9] about having Plaintiff moved to a safer due to threats from gang members.[10] According to Blackwell, these complaints were "met with terse dispositions" and family members were given the run-around when they asked to speak with the superintendent and officer in charge. [Doc. 70-1 at 3: Blackwell Decl.].

---

[7] The Plaintiff did not name Mr. Estridge as a defendant in this action.

[8] The Plaintiff explains that a "civilian" is a prisoner who is not part of a gang or other organization. [Doc. 40 at 3: Amended Complaint].

[9] Blackwell appears to identify these individuals as Mr. Victor, a case manager, and Captain Aaron. The Plaintiff has not named Mr. Victor or Captain Aaron as defendants in this action.

[10] Blackwell asserts that these contacts occurred in September, November and December 2017; this appears to be a typographical error and that Blackwell means to refer to 2016.

The Plaintiff alleges that he was jumped and stabbed by inmates from the neighboring cell block around May 25, 2017.[11]  [Doc. 70 at 4: Summary Judgment Response (alluding to an attack); Doc. 70-5 at 6: July 22, 2017 Request for Information (requesting a transfer from Mr. Victor, stating "I was stabbed and jumped about a month ago."); Doc. 70-5 at 8: Aug. 2, 2017 Request for Information (same); Doc. 70-6 at 3: Plaintiff's Oct. 23, 2017 Letter to Ingram (stating that Ingram "[has] been made aware of me being assaulted and stabbed on Union 2 E-Block…" yet requests from Plaintiff and his family to be moved have been ignored)].

The Defendants have submitted an undisputed forecast of evidence that, in accordance with Department policy and training, if correctional staff observe a prisoner with apparent injuries such as stab wounds, they must immediately report the incident to the Officer in Charge and complete an incident report.  [Doc. 61-1: Ingram Decl. at ¶ 21].  The Defendants have further submitted an undisputed forecast of evidence that there are no incident reports relating to the Plaintiff for the months of May and June of

---

[11] The Plaintiff alleges in his unverified Amended Complaint that he was stabbed in his arm and leg on or about May 25, 2017, by inmates housed in the block next door and that Officer N. Owens opened the cell door for them.  [Doc. 40 at 6: Amended Complaint]. The Plaintiff did not name Officer Owens as a defendant in this action.

2017 and that there were no reports of a stabbing or altercation between the Plaintiff and other offenders during the relevant time.[12]  [Id. at ¶¶ 18-19].

## B.  Medical Care

Plaintiff alleges that Sergeant Krantz[13] noticed his injuries after the stabbing but that the Plaintiff refused medical treatment "due to shock" and out of concern for "becoming more of a target."[14]  [Doc. 70 at 7: Summary Judgment Response].   The Plaintiff further alleges that he became concerned about a possible infection several days later and told Defendant Ingram about the stabbing, but that Defendant Ingram refused to refer him for medical treatment. [Doc. 40 at 7: Amended Complaint].   The Plaintiff further alleges that he received a tetanus shot around June 13, 2017 when he told a nurse about the stabbing incident during an unrelated sick call. [Doc. 40 at 7: Amended Complaint].  However, the Plaintiff offers no forecast of evidence to support these allegations.

---

[12] Ingram further states that he was not personally aware of any incidents or an alleged stabbing involving Plaintiff in May 2017.  [Doc. 61-1: Ingram Decl. at ¶ 20].  Herring states that he has no knowledge of any of the alleged incidents regarding the Plaintiff.  [Doc. 61-2: Herring Decl. at ¶¶ 13].

[13] The Plaintiff did not name Sergeant Krantz as a defendant in this action.

[14] The Plaintiff alleges in the unverified Amended Complaint that, after his assailants left his cell, he cleaned up the blood with shirts then flushed them down the toilet.  [Doc. 40 at 7: Amended Complaint].  In his verified Response, however, the Plaintiff denies ever having said that he flushed bloody clothes down the toilet.  [Doc. 70 at 7: Summary Judgment Response].

8

By contrast, the Defendants have submitted an unrefuted forecast of evidence that there are no records or reports in the Department Incident Management System regarding the Plaintiff during the relevant time period. [Doc. 61-1: Ingram Decl. at ¶¶ 17-19]. Further, the Defendants have submitted a forecast of evidence that Department policy and training requires any correctional staff who observes an offender with apparent injuries (such as stab wounds) to insist on the offender receiving medical attention and to document any refusal of medical attention. [Doc. 61-1: Ingram Decl. at ¶ 21]. Further, correctional staff are required to document any apparent injuries to offenders in an incident report and take photographs of those injuries, and refer an injured offender to the medical unit for treatment. [Id. at ¶ 22-23].

The Defendants have presented an undisputed forecast of evidence that the Defendant Ingram never communicated with the Plaintiff about his concern regarding a possibly infected stab wound or refused him access to medical care for that issue. [Doc. 61-1: Ingram Decl. at ¶ 14].

Defendants have submitted the declaration of Sergeant Krantz, in which he denies that he was personally aware of a stabbing incident involving the Plaintiff or that he spoke with the Plaintiff about being stabbed. Sergeant Krantz further denies ever noticing that the Plaintiff had any injuries

or that he referred the Plaintiff for medical treatment.  [Doc. 61-3: Krantz Decl. at ¶¶ 11-13].

## IV.    DISCUSSION

### A.    Failure to Protect

The Plaintiff alleges that Defendants knew he was in danger from gang members who had threatened to stab him and that they failed to protect him from that risk of harm, which came to pass.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" and the "unnecessary and wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  To establish a violation of the Eighth Amendment, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard.  Wilson v. Seiter, 501 U.S. 294, 297-99 (1991).

This constitutional guarantee imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotations omitted).  To obtain relief on a failure to protect claim, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm and

that prison officials had a deliberately indifferent state of mind.  Id. at 834.
Prison officials who lacked knowledge of a risk cannot be said to have
inflicted punishment, so they may avoid liability by showing, for instance,
"that they did not know of the underlying facts indicating a sufficiently
substantial danger and that they were therefore unaware of the danger, or
that they knew the underlying facts but believed (albeit unsoundly) that the
risk to which the facts gave rise was insubstantial or nonexistent."  Id. at 844.
Where prison officials actually knew of a substantial risk to inmate health or
safety, they may still be found free from liability "if they responded reasonably
to the risk, even if the harm was not averted."  Id.

The Plaintiff alleges that Defendants Ingram and Herring knew that the
Plaintiff's housing assignment exposed him to a substantial risk of serious
harm because the Plaintiff informed them that he was receiving threats from
gang members, and that the Defendants were deliberately indifferent to that
risk or harm.  The Plaintiff's forecast of evidence, however, demonstrates
only that that Plaintiff and his family notified Defendants Ingram and Herring
that Plaintiff was receiving threats from gang members in late 2016 and that
Plaintiff had been moved to a different pod by January 2017.  The Plaintiff
has not submitted any forecast of evidence from which a jury could find that
the Defendants knew that Plaintiff continued to face a substantial risk of

serious harm after the move to a different pod and deliberately failed to protect him from that risk of harm. At most, the Plaintiff has presented a forecast of evidence that the Defendants knew that the Plaintiff did not feel his new pod was safe enough and that he alleged that gang members in the neighboring pod were talking about him "through the door." [Doc. 70-6 at 6: Plaintiff's Jan. 30, 2017 Letter to Herring]. There is no forecast of evidence, however, that the Plaintiff's continued fear was anything more than speculative or that the Defendants had any reason to know that the January move was inadequate to reasonably ensure the Plaintiff's safety. Indeed, the Plaintiff admits that protective custody was available to him but that he decided to forego that placement because he was unwilling to provide names to prison staff. Assuming that the Plaintiff's allegation that he was stabbed about four months after his move to the new pod is true,[15] this fails to demonstrate that the Defendants were deliberately indifferent to a substantial risk to Plaintiff's safety. The Court therefore concludes that the Defendants are entitled to summary judgment with respect to the Plaintiff's

---

[15] The Court notes that the documentation upon which the Plaintiff relies to support his allegation that he was stabbed around May 25, 2017 is not contemporaneous to the alleged incident and in fact post-dates the alleged incident by several months. [See Doc. 70-5 at 6: July 22, 2017 Request for Information; Doc. 70-5 at 8: Aug. 2, 2017 Request for Information; Doc. 70-6 at 3: Plaintiff's Oct. 23, 2017 Letter to Ingram].

claims that they failed in their constitutional duty to protect him from violence at the hands of fellow inmates.

## B. Deliberate Indifference to a Serious Medical Need

The Plaintiff alleges that Defendant Ingram was deliberately indifferent to a serious medical need when he refused the Plaintiff's request for medical care several days after the alleged stabbing when Plaintiff feared an infection.

To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825.

The Plaintiff alleges in his unverified Amended Complaint that he became concerned about a possible infection in the days following the alleged stabbing and told Defendant Ingram, who denied medical care. The Defendants, however, have presented a forecast of evidence that the Defendant Ingram never communicated with the Plaintiff about his concern regarding a possibly infected stab wound and that Defendant Ingram never refused Plaintiff access to medical care for that issue. The Plaintiff has not attempted to rebut this forecast of evidence and has only submitted evidence that he informed Defendant Ingram of a stabbing several months after the incident.[16] As such, no genuine dispute of material fact exists with regards to the Plaintiff's claim of deliberate indifference to a serious medical need. Accordingly, the Defendants will be granted summary judgment on this claim.

## C.  Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  Henry v. Purnell, 652 F.3d 524, 531

---

[16] To the extent that the Plaintiff's and the Defendants' forecasts of evidence differ with regards to Sergeant Krantz's knowledge of alleged injuries that resulted from the stabbing and any offer of medical care, such issues have no bearing on the Plaintiff's deliberate indifference claim because Sergeant Krantz has not been named as a defendant in this action.

(4th Cir. 2011) (*en banc*). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that the Defendants violated the Plaintiff's constitutional rights with respect to his safety or medical care, the Defendants are entitled to qualified immunity on these claims. As such, Defendants' Motion for Summary Judgment based on qualified immunity will be granted.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' Motion for Summary Judgment [Doc. 59].

# ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 59] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to terminate this action.

**IT IS SO ORDERED.**

Signed: February 1, 2021

Martin Reidinger
Chief United States District Judge

16